UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

**JOSEPH FIERRO,**

                  Plaintiff,

        -against-

**CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, KETLER
LOUISSANT,** former Principal, Brooklyn School
for Career Development - P753K, Special Education
District 75, New York City Department of Education,
in his individual and official capacities, **DR. SUSAN
ERBER,** former Superintendent, Special Education
District 75, Citywide Programs, New York City
Department of Education, in her individual and official
capacities, **BONNIE BROWN,** former Deputy
Superintendent (and current Superintendent), Special
Education District 75, Citywide Programs, New York City
Department of Education, in her individual and official
capacities, **JOEL I. KLEIN,** Chancellor, New York City
Department of Education, in his individual and official
capacities, **THERESA EUROPE,** Deputy Counsel to the
Chancellor, New York City Department of Education, in
her individual and official capacities, **DENNIS BOYLES,**
Investigator, Office of Special Investigations, New York
City Department of Education, in his individual and official
capacities, **THOMAS HYLAN,** former Director, Office of
Special Investigations, New York City Department of
Education, in his individual and official capacities, and
**LORRAINE HAYNES,** Personnel Manager, Region 3,
New York City Department of Education, in her individual
and official capacities,

                  Defendants.
-------------------------------------------------------x

Docket No.:

**08**    **1837**

**COMPLAINT**

SIFTON J

GOLD, M.J.

**JURY TRIAL DEMANDED**



Plaintiff JOSEPH FIERRO (hereinafter also referred to as "Plaintiff"), by his Attorneys,

OFODILE & ASSOCIATES, P.C., complaining of the Defendants – CITY OF NEW YORK,

NEW YORK CITY DEPARTMENT OF EDUCATION, KETLER LOUISSANT, former

Principal, Brooklyn School for Career Development (P753K), Special Education District 75,

New York City Department of Education, in his individual and official capacities, DR. SUSAN

ERBER, former Superintendent, Special Education District 75, Citywide Programs, New York

City Department of Education, in her individual and official capacities, BONNIE BROWN,

former Deputy Superintendent (and current Superintendent), Special Education District 75,

Citywide Programs, New York City Department of Education, in her individual and official

capacities, JOEL I. KLEIN, Chancellor, New York City Department of Education, in his

individual and official capacities, THERESA EUROPE, Deputy Counsel to the Chancellor, New

York City Department of Education, in her individual and official capacities, DENNIS BOYLES,

Investigator, Office of Special Investigations, New York City Department of Education, in his

individual and official capacities, THOMAS HYLAN, former Director, Office of Special

Investigations, New York City Department of Education, in his individual and official capacities,

and LORRAINE HAYNES, Personnel Manager, Region 3, New York City Department of

Education, in her individual and official capacities – upon information and belief, alleges as

follows.

## NATURE OF ACTION

1.       This action is brought by Plaintiff Joseph Fierro, pursuant to 42 U.S.C. § 1983, to

redress retaliatory actions perpetrated by Defendants, who are State actors, against Plaintiff for

Plaintiff's exercising his rights under the First Amendment to the U.S. Constitution, which

applies to the States through the Fourteenth Amendment.

˘2˘

2.    Plaintiff seeks injunctive and declaratory relief, other equitable, relief, and compensatory damages, punitive damages, and attorneys' fees and costs and disbursements pursuant to 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

3.    Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. § 1331, this being an action arising under the Constitution and Federal Law, and by 28 U.S.C. § 1343(a)(3), this being an action authorized by law to redress the deprivation, under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

4.    Venue is proper because each event complained of herein either occurred in Brooklyn, New York (County of Kings) or emanated from events that occurred in Brooklyn, New York (County of Kings), which is within the Eastern District of New York.

## PARTIES

5.    During all times relevant and material to this case, Plaintiff Joseph Fierro resided in the State of New York within the jurisdiction of this Court. In addition, during all times relevant and material to this case, Plaintiff was employed full-time by Defendants City of New York and/or the New York City Department of Education and during most times relevant and material to this case, Plaintiff worked as an Assistant Principal at the Brooklyn School for Career Development – P753K, a New York City public high school, located at 510 Clermont Avenue, Brooklyn, NY 11238 that was and still is part of District 75 of the New York City Department of Education. Furthermore, during all times relevant and material to this case, Plaintiff was

supervised by and reported to Defendants Ketler Louissaint (who was the Principal of P753K),

Bonnie Brown (who was the Deputy Superintendent of District 75), Dr. Susan Erber (who was

the Superintendent of District 75), Defendant Joel I. Klein (who was the Chancellor of the New

York City Department of Education), Defendant Theresa I. Europe (who was the Deputy Counsel

to the Chancellor of the New York City Department of Education), and Defendant Lorraine

Haynes (who was the Personnel Manager for Region 3 of the New York City Department of

Education).

6.      During all times relevant and material to this case, Defendant City of New York

was a municipal corporation incorporated under the laws of the State of New York, and may

have employed Plaintiff and the individual Defendants, through its Department of Education.

7.      During all times relevant and material to this case, Defendant New York City

Department of Education was a department/agency of the City of New York, which in turn was a

municipal corporation incorporated under the laws of the State of New York.  During all times

relevant and material to this case, Defendant New York City Department of Education may have

employed Plaintiff and the individual Defendants.

8.      During all times relevant and material to this case, Defendant Ketler Louissant

was employed by Defendants City of New York and/or the New York City Department of

Education as the Principal of the Brooklyn School for Career Development - P753K at 510

Clermont Avenue, Brooklyn, NY 11238.  During most times relevant and material to this case,

Defendant Louissaint supervised Plaintiff Joseph Fierro.  During all times relevant and material

to this case, Defendant Ketler Louissaint was supervised by and reported to Defendants Bonnie

Brown (who was the Deputy Superintendent of District 75), Dr. Susan Erber (who was the

Superintendent of District 75), Joel I. Klein (who was the Chancellor of the New York City

Department of Education), Theresa I. Europe (who was the Deputy Counsel to the Chancellor of

the New York City Department of Education), and Lorraine Haynes (who was the Personnel

Manager for Region 3 of the New York City Department of Education).

9. During all times relevant and material to this case, Defendant Dr. Susan Erber was

employed by Defendants City of New York and/or the New York City Department of Education

as the Superintendent of Special Education District 75, Citywide Programs, New York City

Department of Education. During all times relevant and material to this case, Defendant Erber

supervised Plaintiff, Defendant Bonnie Brown, and Defendant Ketler Louissaint. During all

times relevant and material to this case, Defendant Dr. Susan Erber was supervised by and

reported to Joel I. Klein (who was the Chancellor of the New York City Department of

Education), Theresa I. Europe (who was the Deputy Counsel to the Chancellor of the New York

City Department of Education), and Lorraine Haynes (who was the Personnel Manager for

Region 3 of the New York City Department of Education).

10. During all times relevant and material to this case, Defendant Bonnie Brown was

employed by Defendants City of New York and/or the New York City Department of Education

as the Deputy Superintendent of Special Education District 75, Citywide Programs, New York

City Department of Education. During all times relevant and material to this case, Defendant

Brown supervised Plaintiff and Defendant Louissaint. During all times relevant and material to

this case, Defendant Bonnie Brown was supervised by and reported to Defendants Dr. Susan

Erber (who was the Superintendent of District 75), Joel I. Klein (who was the Chancellor of the

New York City Department of Education), Theresa I. Europe (who was the Deputy Counsel to

the Chancellor of the New York City Department of Education), and Lorraine Haynes (who was the Personnel Manager for Region 3 of the New York City Department of Education).

11.   During all times relevant and material to this case, Defendant Joel I. Klein was employed by Defendants City of New York and/or the New York City Department of Education as the Chancellor of the New York City Department of Education and supervised Plaintiff and Defendants Theresa Europe, Dr. Susan Erber, Bonnie Brown, Dennis Boyles, Thomas Hylan, Lorraine Haynes, and Ketler Louissaint.

12.   During all times relevant and material to this case, Defendant Theresa Europe was employed by Defendant City of New York and/or the New York City Department of Education as the Deputy Counselor to the Chancellor and supervised Plaintiff and Defendants Dr. Susan Erber, Bonnie Brown, Dennis Boyles, Thomas Hylan, Lorraine Haynes, and Ketler Louissaint. During all times relevant and material to this case, Defendant Theresa Europe was supervised by and reported to Defendant Joel I. Klein (who was the Chancellor of the New York City Department of Education).

13.   During all times relevant and material to this case, Defendant Dennis Boyles was employed by Defendants City of New York and/or the New York City Department of Education as an Investigator in the Office of Special Investigations of the New York City Department of Education. During all times relevant and material to this case, Defendant Dennis Boyles was reported to and was supervised by Defendant Thomas Hylan (who was the Director of the Office of Special Investigations), Defendant Joel I. Klein (who was the Chancellor of the New York City Department of Education), and Defendant Theresa Europe (who was the Deputy Counsel to the Chancellor of the New York City Department of Education).

14.   During all times relevant and material to this case, Defendant Thomas Hylan was employed by Defendants City of New York and/or the New York City Department of Education as the Director of the Office of Special Investigations of the New York City Department of Education and supervised Defendant Dennis Boyles.  During all times relevant and material to this case, Defendant Thomas Hylan reported to and was supervised by Defendant Joel I. Klein (who was the Chancellor of the New York City Department of Education) and Defendant Theresa Europe (who was the Deputy Counsel to the Chancellor of the New York City Department of Education).

15.   During all times relevant and material to this case, Defendant Lorraine Haynes was employed by Defendants City of New York and/or the New York City Department of Education as the Personnel Manager of Region 3 of the New York City Department of Education.  During all times relevant and material to this case, Defendant Lorraine Haynes supervised Plaintiff and Defendants Dr. Susan Erber, Bonnie Brown, and Ketler Louissaint. During all times relevant and material to this case, Defendant Lorraine Haynes reported to and was supervised by Defendant Joel I. Klein (who was the Chancellor of the New York City Department of Education) and Defendant Theresa Europe (who was the Deputy Counsel to the Chancellor of the New York City Department of Education).

16.   During all times relevant and material to this case, the actions of Defendants Ketler Louissant, Dr. Susan Erber, Bonnie Brown, Joel I. Klein, Theresa Europe, Dennis Boyles, Thomas Hylan, and Lorraine Haynes complained of herein were done as part of the custom, practice, usage, regulation, and/or direction of Defendant City of New York and/or Defendant New York City Department of Education, and Defendant City of New York and/or Defendant

-7-

New York City Department of Education are as such responsible for the actions of these individual Defendants.

## FULFILMENT OF ADMINISTRATIVE PROCEDURES

17.    The New York State Division of Human Rights administratively dismissed the complaint filed before it and vitiated the election of remedies for administrative convenience giving Plaintiff the right to file this action in this Court.

## FACTUAL ALLEGATIONS

18.    Plaintiff Joseph Fierro worked as an Assistant Principal at P753K from September 30, 2005 until he was removed from this school in December 2005 in retaliation for exercising his First Amendment freedoms.  P753K is part of Special Education District 75 of the New York City Department of Education.

19.    During Plaintiff's time as an Assistant Principal at P753K, he observed incidents in which Ms. Dorf, a Dean, physically and verbally assaulted and abused students at the school, many of whom were severely emotionally disabled and/or had Down's Syndrome.  He also received reports from students of same.  Plaintiff repeatedly reported Ms. Dorf's physical and verbal abuse of children to the Principal, Defendant Ketler Louissant, who would instruct Plaintiff not to take further action and tell Plaintiff that he would deal with the issue but would not.  In fact, as far as Plaintiff is aware, Defendant Ketler Louissaint took no corrective action.  In reporting to Defendant Louissaint Ms. Dorf's criminal activity toward children, Plaintiff acted as an ordinary citizen for the benefit of the community and not as an official or employee of the City of New York or the New York City Department of Education.

20.    Plaintiff himself observed Ms. Dorf on several occasions kicking students in the

cafeteria when they got too close to the door as well as throwing students against the wall and feeling them down/body frisking them to see if they had taken food from the cafeteria. Plaintiff took Ms. Dorf to the side several times and told her that she was not permitted to kick children or frisk them. Ms. Dorf responded by stating that Defendant Principal Louissaint was aware of her actions. She continued to engage in these illegal activities. Plaintiff also witnessed Ms. Dorf using profanity in front of children, parents, and staff.

21.    In addition to directly witnessing Ms. Dorf's abusiveness toward students, Plaintiff also received reports from students of Ms. Dorf's abusiveness. K.B., a student, reported that Ms. Dorf had kicked him in his privates. R.B., another student, told Plaintiff that Ms. Dorf had kicked him in his injured leg. R.B.'s mother came to the school to complain about same. Defendant Louissaint refused to meet with her and told Plaintiff instead to talk to her. Plaintiff took the mother's complaint in the presence of Ms. Dorf.

22.    Plaintiff repeatedly reported to Defendant Louissaint his observations and the information he received from students of Ms. Dorf's physical abuse of children. Louissaint always responded by directing Plaintiff not to follow up and stating that he would take care of it. Louissaint also incredulously informed Plaintiff that Ms. Dorf had been kicking children for years. As stated above, as far as Plaintiff is aware, Defendant Louissaint did nothing to address the problem.

23.    In addition to reporting to Principal Louissaint Ms. Dorf's abusiveness and use of profanity, Plaintiff also raised with Defendant Louissaint other issues directly pertinent to school safety. When Plaintiff arrived at the school, the school was on the New York State list of persistently dangerous schools, so the issues that Plaintiff raised were of great consequence to the

school community.  In reporting these issues, Plaintiff acted as an ordinary citizen for the benefit of the community and not as an official or employee of the City of New York or the New York City Department of Education.  Defendant Louissant responded to Plaintiff's safety-related concerns in the same manner in which he responded to Plaintiff's concerns about Ms. Dorf's abusiveness – he directed Plaintiff not to take any further action and told Plaintiff that he would take care of it, but did not.

24.    The school safety issues that Plaintiff raised with Defendant Louissaint included but were not limited to the following.  On December 7, 2005, M.J., a student, put a knife to the throat of C.N., another student, and robbed her.  Plaintiff told Principal Louissant that they needed to call the Police.  Principal Louissant directed Plaintiff not to and told him he would take care of it but did not.  On another occasion, another student, M.S., brought a razor blade to school.  Plaintiff told Principal Louissant that they needed to file a superintendent suspension. Again, Louissant directed Plaintiff not to and told Plaintiff he would take care of it but did not. In addition, Plaintiff found out that students were leaving the school building before the end of the school day.  He informed Louissant and told him that they needed to file an EIC report, notify parents, and call the Police.  Louissant directed Plaintiff not to, and again, told Plaintiff he would take care of it, but did not.  Sergeant Getter from School Safety brought up the same issue to Louissant and he said he didn't want to discuss it.  Plaintiff also found out that Ms. Dorf was releasing underaged students from school, which presented both a safety and legal issue.  He related same to Louissant and was again dismissed by Louissant.  Furthermore, Plaintiff made the following suggestions to Louissaint to improve school safety.  He advised that the Deans should be stationed on the second and third floors of the building as opposed to the first floor to make

them more available for students and staff. He also stated that the safe room should be opened, and he expressed concerns to Louissaint regarding staff absenteeism.

25.     In addition to exercising his First Amendment right to freedom of speech during his time at P753K by reporting child abuse and school safety issues to Defendant Louissaint, he also exercised his First Amendment rights by refusing to target a new teacher with whom one of the Assistant Principals had a personal difference.  Assistant Principal Yvrose Pierre and Defendant Principal Ketler Louissaint asked Plaintiff to give new teacher Elizabeth Schwartz an unsatisfactory rating because Ms. Pierre did not like Ms. Schwartz and had a "personal female difference" with her.  As far as Plaintiff was aware, Ms. Schwartz was a very good teacher and had tried very hard and had succeeded in reaching students who were very emotionally disabled. In fact, Plaintiff had put Ms. Schwartz in charge of the Student Council and she had made a lot of progress with students whom were difficult to reach.  Plaintiff was not willing to give Ms. Schwartz an undeserved unsatisfactory rating and potentially blackball her and destroy her career because Ms. Pierre had a "personal female difference" with her.  Plaintiff told same to Pierre and Louissaint and further told them not to ask him to do things like that.  They then conveyed to Plaintiff that they had mistakenly thought he was team player.  Plaintiff said that he was a team player but that he wasn't going to destroy Ms. Schwartz' career and that he didn't view her as incompetent.

26.     Because Plaintiff was deeply concerned about the child abuse and school safety issues and Defendant Principal Louissaint was showing no interest in taking corrective action, Plaintiff decided to write Louissaint an e-mail on December 11, 2005, reiterating the First Amendment speech relating to Ms. Dorf's abusiveness and school safety outlined above.  In the

days following, Plaintiff reiterated in e-mails to Louissaint concerns that he had written about in the 12/11/05 letter, as well as raised additional concerns of dangerous situations being created at the school.

27.    On December 14, 2005, Defendant Louissant stormed into Plaintiff's office. He yelled at Plaintiff about the 12/11/05 e-mail and told Plaintiff that Plaintiff could cause him to be arrested or to lose his job if the e-mail got in the wrong hands. He asked if Plaintiff had sent the e-mail to anyone else, to which Plaintiff responded no. However, Defendant Louissaint himself ended up forwarding the e-mail to the District 75 office. Later that day, in retaliation for Plaintiff's First Amendment speech relating to the child abuse, school safety issues, and refusal to blackball a new teacher, Louissant sent a letter to Plaintiff stating that Plaintiff was being removed from his Assistant Principal position at P53K. In addition, on that day, Louissant handed Plaintiff a letter from Defendant Bonnie Brown, Deputy Superintendent of District 75 at the time, instructing Plaintiff to report to the District office on 12/19/05 and stating that Plaintiff might face disciplinary action. Louissant accused Plaintiff of trying to "take [him] down" with the complaints he made in the 12/11/05 e-mail.

28.    Plaintiff reported to Defendant Bonnie Brown on 12/19/05 and she communicated to Plaintiff that she was angry about the e-mail that Plaintiff had sent to Principal Louissant. She stated to Plaintiff, "You write these scathing multi page letters attacking other people on the staff and that's so inappropriate. The nerve of you an AP to write to Ketler about his other APs. I mean who put you there to judge?" As punishment for Plaintiff's exercise of his First Amendment speech, Ms. Brown confirmed to Plaintiff that he was no longer going to be working at P753K and instructed him to just sit day after day in an office on the 8th Floor of the District

˘12˘

Building with no phone and no computer and not to talk to anyone. She also advised him to look for work outside of District 75. Not only did Defendant Brown retaliate against Plaintiff by removing him from P753K, but by also resigning him to doing nothing in an office in the District Building as opposed to allowing him to return to P12X (a District 75 school in the Bronx) as an Assistant Principal, which is the school where he was actually appointed as an Assistant Principal and out of which he had been transferred in August/September 2005. Furthermore, Defendant Bonnie Brown did not even investigate the substance of Plaintiff's reports of child abuse or show any interest in them.

29. In addition to retaliating against Plaintiff herself for his protected activities, Defendant Bonnie Brown also encouraged, condoned, and consented to the retaliatory acts committed against Plaintiff by Defendant Louissaint, whom she supervised, as well as failed to halt Defendant Louissaint's retaliatory acts or discipline him for engaging in them. In general, Defendant Brown has encouraged, condoned, and consented to retaliation against employees within District 75 of the Department of Education for exercising their First Amendment freedom of speech. She has failed to discipline or hinder the individuals under her supervision, such as Defendant Ketler Louissaint, who have perpetrated retaliatory acts. She has been totally indifferent to and/or reckless in her supervision of employees within District 75 of the New York City Department of Education on this issue and has created or allowed the continuation of a policy and culture within District 75 of supervisory personnel retaliating against lower level employees with impunity and knowing that they will not be punished.

30. On 12/27/05, Plaintiff filed a complaint with an intake worker at the Office of Richard J. Condon, the Special Commissioner of Investigation for the New York City School

District, about Ms. Dorf's physical/verbal abuse of students and the issues directly relating to school safety outlined above, as well as about the retaliation he was facing for reporting same. Plaintiff informed the intake worker that he had taped conversations as evidence of the substance of his complaints. Plaintiff asked the intake worker not to report to the Department of Education the fact that he had made these complaints to the Special Commissioner's Office for fear that he would face further retaliation. The intake worker promised that he would not and told him to bring in his tapes. When Plaintiff returned the following day with the tapes, the same intake worker told him that they had sent his complaint to the Department of Education. Plaintiff was very upset that Condon's office had violated his trust and had made him susceptible to further retaliation. Plaintiff met with Kyle Sterkin at the main office of the New York City Department of Investigation about his concerns regarding student welfare and retaliation and about Condon's office violating his trust by forwarding his complaint to the Department of Education. Sterkin admitted that what Condon's office did was extremely inappropriate and that his office would investigate Plaintiff's complaints. However, upon Plaintiff's information and belief, his office did not take any action. In reporting to Sterkin and Condon's office Ms. Dorf's abusiveness toward children and the school safety issues, Plaintiff acted as an ordinary citizen for the benefit of the community and not as an official or employee of the City of New York or the New York City Department of Education.

31.     Also, in December 2005, Plaintiff tried to file a police report with the local police precinct about the child abuse and school safety issues. Detective Rogers at the precinct stated that he called the Office of Special Investigations at the New York City Department of Education about Plaintiff's complaint and that this office had informed him that they were handling it.

˘14˘

Plaintiff communicated to Detective Rogers that an outside body was needed to investigate the abuse and safety issues but Rogers refused to take the complaint. Plaintiff thereafter reported the child abuse and school safety issues to the Internal Affairs Bureau of the New York City Police Department and protested Detective Rogers' refusal to take his complaint. In addition, Plaintiff called the City hotline, 311, twice and related his complaints about the child abuse and school safety issues. In making each of these complaints, Plaintiff acted as an ordinary citizen for the benefit of the community and not as an official or employee of the City of New York or the New York City Department of Education.

32.    On January 3, 2006, after Plaintiff had already complained to the Special Commissioner's office, the main office of the NYC Department of Investigation, and the Police about the student welfare issues and/or the retaliation, Plaintiff and his union representative met with Defendants District 75 Deputy Superintendent Bonnie Brown and District 75 Superintendent Dr. Susan Erber. Dr. Erber told Plaintiff that they were angry about the 12/11/05 letter that Plaintiff had written to Louissaint. Dr. Erber told Plaintiff that she was "mortified" that Plaintiff could write such a letter, that it was an "awful" and "untrue" piece of work, and chastised him for putting things in writing. She also told Plaintiff, who is Italian, that whoever his "G-dfather" was was giving him bad advice. She instructed Plaintiff to not have any interaction with any staff, students, or parents from P753K or from P12X, where he had previously worked as an Assistant Principal and was actually appointed as an Assistant Principal. Plaintiff expressed that he was standing up for what was right and that he had written the e-mail after trying to bring up his concerns with Louissaint day after day. Plaintiff tried to discuss with Brown and Erber his concerns about Dean Dorf's abuse of children and the other student welfare issues that he had

raised in the letter, but Erber and Brown refused to allow him to discuss them. Dr. Erber also instructed Plaintiff not to communicate about P753K with anyone.

33.    Plaintiff thereafter received a letter from Defendant Superintendent Dr. Susan Erber, dated 1/6/2006, in which she reiterated her fierce disapproval to Plaintiff writing the 12/11/05 letter and reiterated her instruction to Plaintiff not to speak about P753K to anyone. This letter was placed into Plaintiff's file. In addition to retaliating against Plaintiff herself for his protected activities, Defendant Susan Erber also encouraged, condoned, and consented to the retaliatory acts committed against Plaintiff by Defendants Bonnie Brown and Ketler Louissaint, whom she supervised, as well as failed to halt Defendants Brown's and Louissaint's retaliatory acts or discipline them for engaging in them. In general, Defendant Dr. Susan Erber approved, encouraged, and endorsed retaliation against employees within District 75 of the New York City Department of Education for exercising their First Amendment freedom of speech. She failed to discipline or hinder the individuals under her supervision, such as Defendants Bonnie Brown and Ketler Louissaint, who perpetrated retaliatory acts. She was totally indifferent to and/or reckless in her supervision of employees within District 75 of the New York City Department of Education on this issue and created or allowed the continuation of a policy and culture within District 75 of supervisory personnel retaliating against lower level employees with impunity and knowing that they would not be punished.

34.    Because the Office of the Special Commissioner of Investigation had already forwarded Plaintiff's complaint to the Department of Education, Plaintiff admitted to Defendant Bonnie Brown that he had filed the complaint with the Special Commissioner's Office and in response, she told Plaintiff that he should have listened to the admonition given by her and

˘16˘

Superintendent Dr. Susan Erber to let the past be the past and not to bring up the e-mail anymore.

35.     Plaintiff's complaints about the student abuse and other student welfare issues to outside bodies resulted in him being subjected to further retaliation.  At the end of January 2006, after meeting with Bonnie Brown and Principal Louissaint again, Plaintiff received a letter dated 1/27/06, from Bonnie Brown, in which she informed him that in addition to being discontinued as an Assistant Principal at P753K, he was being discontinued as an Assistant Principal in the District.  He was therefore demoted to the status of a regular teacher and his salary decreased as well, and Plaintiff claims the income that he has lost from the demotion as specific damages in this case.  Furthermore, Plaintiff who had already served more than three years as Assistant Principal would have received tenure in less than two years and claims as specific damages raises and benefits associated with receiving tenure.

36.     Plaintiff received another letter, dated 1/24/06, from Principal Louissaint in which he communicated his disapproval of Plaintiff writing the 12/11/05 e-mail and accused Plaintiff of making "accusatory remarks."  Plaintiff expressed his protest to the letter on the letter itself and indicated that it was part of retaliation towards him for reporting physical and verbal abuse of students and the Principal's failure to follow rules and regulations with regard to many other issues.

37.     In addition to reporting the student abuse, school safety issues, and/or retaliation to the entities named above, Plaintiff also wrote a letter to Defendant Chancellor Joel I. Klein in which he discussed all of these issues.  Defendant Chancellor Klein, who had supervisory power over Erber, Brown, and Louissiant, failed to take any action to remedy or to stop the retaliation or to discipline Erber, Brown, and Louissiant, whom Klein supervised, and therefore, condoned,

˘17˘

endorsed, and/or consented to the retaliatory actions.

38.     Plaintiff also reported his concerns about students and the retaliation to the Department of Education's Office of Special Investigations. He met with Defendant Dennis Boyles several times, an Investigator in the Office of Special Investigations. Plaintiff explained in detail his concerns about the physical abuse of students at P753K and other dangers being posed to student welfare at the school and the retaliation he was facing for reporting same and for refusing to blackball Ms. Schwartz. At one of the meetings, Defendant Thomas Hylan, then-Director of the Office of Special Investigations was also present, and during another of the meetings, Mr. Boyles called in Defendant Theresa Europe, the Deputy Counselor to the Chancellor. Plaintiff reiterated his concerns to her and played for her several of his tapes. Defendant Theresa Europe told Plaintiff that Dr. Susan Erber was on her way out, and that after listening to the tapes, there was no way that Bonnie Brown was going to be appointed Superintendent. She also told Plaintiff that he would be protected from further retaliation. However, Brown was in fact appointed Superintendent and Defendant Theresa Europe, who also had supervisory power over Defendants Erber, Brown, and Louissaint, failed to take any action to remedy or stop the retaliation or to discipline Erber, Brown, and Louissiant. She therefore endorsed, condoned, and/or consented to the retaliatory actions.

39.     In general, Defendant Klein and Europe have encouraged, condoned, endorsed, and consented to retaliation against employees within the Department of Education for exercising their First Amendment freedom of speech. They have failed to discipline or hinder the individuals under their supervision, such as Defendants Erber, Brown, and Louissaint, who have perpetrated retaliatory acts. They have been totally indifferent to and/or reckless in their

supervision of employees within the New York City Department of Education on this issue and have created or allowed the continuation of a policy and culture of supervisory personnel retaliating against lower level employees with impunity and knowing that they will not be punished.

40.    In addition, as alluded to above, Plaintiff informed Defendant Thomas Hylan, then-Director of the Office of Special Investigations, about the child abuse, school safety issues, the requests that were made of Plaintiff to blackball Ms. Schwartz, and the retaliatory actions that Plaintiff was facing. Plaintiff spoke to Defendant Hylan about these issues during the meeting where Dennis Boyles was present and in the hallway during other times when Plaintiff went to meet Boyles. Plaintiff asked Defendant Hylan to take action on them. Defendant Hylan had the ability to recommend to Defendant Chancellor Joel I. Klein that the individuals retaliating against Plaintiff for exercising his First Amendment freedom of speech be disciplined, but Defendant Hylan failed to do that.

41.    At one of the appointments that Plaintiff had with Defendant Dennis Boyles, he was in the elevator with Boyles and Boyles added to the retaliatory hostile work environment that Plaintiff was already facing by putting his hand on his gun in order to intimidate Plaintiff and threatening Plaintiff not to go to the press with the information that he had about child abuse and school safety issues and not to share his tapes with anyone. Plaintiff told Boyles that he would do what he felt he had to do. Boyles also demanded Plaintiff to give him the originals of the tapes, as well as his notebooks. Plaintiff told him that he would not give him the originals of his tapes or his notebooks, but that he would allow Boyles to make copies of his notes in his presence and that he would bring in the originals of the tapes and make copies in Boyles' office

˅19˅

in Boyles' presence.  Plaintiff went to Boyles' office another time to make said copies but Boyles soon told him to leave.

42.    In addition to the above, Plaintiff returned to the office of Richard J. Condon, the Special Commissioner of Investigation for the New York City School District, as well as to the main office of New York City Department of Education.  He again asked that his concerns about the children and the retaliation be investigated and the offices failed to do so.

43.    Defendants Bonnie Brown and Dr. Susan Erber forced Plaintiff to just sit in the 8th floor office of the District Office for several weeks.  However, because administrators and teachers were stopping by the office and talking to Plaintiff and Defendants did not want Plaintiff to be communicating with anyone, Defendants transferred him to the Regional Office in Flushing, Queens.  There he was placed in a room with other City of New York/Department of Education employees whom had been removed from their positions in the New York City Department of Education.  Defendant Lorraine Haynes, the Personnel Manager for Region 3, presided over that room of displaced employees and added to the retaliatory hostile work environment to which Plaintiff was being subjected by instructing Plaintiff not to speak or communicate with anyone in the room while allowing the other individuals in the room to communicate with one another.  In addition to retaliating against Plaintiff herself for his protected activities, Defendant Lorraine Haynes also encouraged, condoned, and consented to the retaliatory acts committed against Plaintiff by Defendants Erber, Brown, and Louissaint, whom she supervised, as well as failed to halt their retaliatory acts or discipline them for engaging in them.  In general, Defendant Haynes has approved, encouraged, and endorsed retaliation against employees within the Department of Education for exercising their First Amendment freedom of

speech. She has failed to discipline or hinder the individuals under her supervision, such as Defendants Erber, Brown, and Louissaint, who have perpetrated retaliatory acts. She has been totally indifferent to and/or reckless in her supervision of employees within the New York City Department of Education on this issue and has created or allowed the continuation of a policy and culture of supervisory personnel retaliating against lower level employees with impunity and knowing that they will not be punished.

44.    Defendants' retaliatory and harassing acts caused Plaintiff great physical, emotional, and mental distress and were a major cause of his having to take a medical leave of absence after two months of being forced to sit in a room doing nothing. Plaintiff was not paid for approximately 20 days (4 weeks) of this leave of absence, and claims these lost wages as specific damages in this case. Furthermore, Plaintiff received medical treatment for his distress and was prescribed medical and claims the insurance co-pays that he had to pay as specific damages. In addition, Plaintiff had to use sick days for this leave of absence and asks that the sick days be reinstated to him.

45.    Furthermore, the distress that Plaintiff experienced as a result of Defendants' actions further delayed his plans to undergo training and to work one-on-one with autistic children after school, on weekends, and during the summer. Plaintiff underwent this training in the summer of 2006 but the distress from Defendants' actions has been a major contributing factor to him not being able to start performing the work for which he was trained until recently. Because there has been a shortage of such workers, Plaintiff would have been able to obtain employment doing this work almost immediately after the training if he had been mentally and emotionally prepared to do so. Therefore, Plaintiff claims as specific damages the wages that he

would have earned in such a position had he not been prevented from doing this work by Defendants' actions.

46.     The actions of the individual defendants were callous, malicious, and done knowingly and wantonly in violation of Plaintiff's rights under Federal and State law and Plaintiff is entitled to punitive damages against the individual Defendants.

## AS FOR A FIRST CAUSE OF ACTION

47.     Plaintiff realleges and repeats paragraphs 1 through 46 as if each paragraph is recited and repeated verbatim herein.

48.     While acting under color of State Law, Defendants Ketler Louissant, Dr. Susan Erber, and Bonnie Brown violated Plaintiff's right to freedom of speech under the First Amendment by retaliating against him for said speech by removing him from the Assistant Principal position at P753K.  By violating Plaintiff's constitutional rights under color of State Law, these individual Defendants violated 42 U.S.C. § 1983.

## AND AS FOR A SECOND CAUSE OF ACTION

49.     Plaintiff realleges and repeats paragraphs 1 through 48 as if each paragraph is recited and repeated verbatim herein.

50.     While acting under color of State Law, Defendants Ketler Louissant, Dr. Susan Erber, and Bonnie Brown conspired with one another to violate Plaintiff's right to freedom of speech under the First Amendment by conspiring to retaliate against him for said speech by removing him from the Assistant Principal position at P753K.  By conspiring to violate Plaintiff's constitutional rights under color of State Law, these individual Defendants violated 42 U.S.C. § 1983.

## AND AS FOR A THIRD CAUSE OF ACTION

51.     Plaintiff realleges and repeats paragraphs 1 through 50 as if each paragraph is recited and repeated verbatim herein.

52.     While acting under color of State Law, Defendants Dr. Susan Erber and Bonnie Brown violated Plaintiff's right to freedom of speech under the First Amendment by retaliating against him for said speech by stripping him of the title of Assistant Principal completely.  By violating Plaintiff's constitutional rights under color of State Law, the individual Defendants violated 42 U.S.C. § 1983.

## AND AS FOR A FOURTH CAUSE OF ACTION

53.     Plaintiff realleges and repeats paragraphs 1 through 52 as if each paragraph is recited and repeated verbatim herein.

54.     While acting under color of State Law, Defendants Dr. Susan Erber and Bonnie Brown conspired with one another to violate Plaintiff's right to freedom of speech under the First Amendment by conspiring to retaliate against him for said speech by stripping him of the title of Assistant Principal completely.  By conspiring to violate Plaintiff's constitutional rights under color of State Law, the individual Defendants violated 42 U.S.C. § 1983.

## AND AS FOR A FIFTH CAUSE OF ACTION

55.     Plaintiff realleges and repeats paragraphs 1 through 54 as if each paragraph is recited and repeated verbatim herein.

56.     While acting under color of State Law, Defendants Ketler Louissant, Dr. Susan Erber, Bonnie Brown, Dennis Boyles, and Lorraine Haynes violated Plaintiff's right to freedom of speech under the First Amendment by retaliating against him for said speech by subjecting

him to a retaliatory hostile work environment. By violating Plaintiff's constitutional rights under color of State Law, the individual Defendants violated 42 U.S.C. § 1983.

## AND AS FOR A SIXTH CAUSE OF ACTION

57.     Plaintiff realleges and repeats paragraphs 1 through 56 as if each paragraph is recited and repeated verbatim herein.

58.     While acting under color of State Law, Defendants Ketler Louissant, Dr. Susan Erber, Bonnie Brown, Dennis Boyles, and Lorraine Haynes conspired with one another to violate Plaintiff's right to freedom of speech under the First Amendment by conspiring to retaliate against him for said speech by subjecting him to a retaliatory hostile work environment. By conspiring to violate Plaintiff's constitutional rights under color of State Law, the individual Defendants violated 42 U.S.C. § 1983.

## AND AS FOR A SEVENTH CAUSE OF ACTION

59.     Plaintiff repeats and re-alleges paragraphs 1 through 58 as if each paragraph is repeated verbatim herein.

60.     While acting under color of State Law, Defendants Joel Klein and Theresa Europe, and through them the City of New York/New York City Department of Education, have approved, encouraged, endorsed, condoned, and consented to retaliation against employees within the Department of Education for exercising their First Amendment freedom of speech. They have failed to discipline or hinder individuals under their supervision, such as Dr. Susan Erber, Bonnie Brown, Ketler Louissaint, Dennis Boyles, Thomas Hylan, and Lorraine Haynes who have perpetrated retaliatory acts or who have failed to stop retaliatory actions. Defendants Klein and Europe have been totally indifferent to and/or reckless in their supervision of

employees within the New York City Department of Education on this issue. They have created or allowed the continuation of a policy and culture within the New York City Department of Education of supervisory personnel retaliating against lower level employees with impunity and knowing that they will not be punished. Plaintiff directly informed Defendants Klein and Europe that he was being retaliated against for engaging in the First Amendment activity of reporting student abuse and other issues related to student welfare, and neither Klein nor Europe took any action to halt the retaliation or to discipline the individuals perpetrating the retaliatory acts.

61.     Defendants Joel Klein, Theresa Europe, and the City of New York/New York City Department of Education are therefore liable under 42 U.S.C. § 1983 for their acts and omissions, which proximately caused the unlawful actions perpetrated by Defendants Dr. Susan Erber, Bonnie Brown, Ketler Louissaint, Dennis Boyles, Thomas Hylan, and Lorraine Haynes (whom were under their supervision) against Plaintiff in the First through Sixth, Eighth, and Ninth Causes of Action.

## AND AS FOR AN EIGHTH CAUSE OF ACTION

62.     Plaintiff repeats and re-alleges paragraphs 1 through 61 as if each paragraph is repeated verbatim herein.

63.     While acting under color of State Law, Defendants Lorraine Haynes, Dr. Susan Erber, and Bonnie Brown, have approved, encouraged, and endorsed retaliation against employees within the Department of Education for exercising their First Amendment freedom of speech. They have failed to discipline or hinder individuals under their supervision who have perpetrated retaliatory acts. Defendants Haynes, Erber, and Brown have been totally indifferent to and/or reckless in their supervision of employees within the New York City Department of

Education on this issue.  They have created or allowed the continuation of a policy and culture within their respective sectors of the New York City Department of Education of supervisory personnel retaliating against lower level employees with impunity and knowing that they will not be punished.  Defendant Lorraine Haynes was aware that Defendants Dr. Susan Erber, Bonnie Brown, and Ketler Louissaint (whom were under her supervision) were retaliating against Plaintiff, and she took no action to halt the retaliation or to discipline these individuals. Defendant Dr. Susan Erber was aware that Defendants Bonnie Brown and Ketler Louissaint, (whom were under her supervision) were retaliating against Plaintiff, and she took no action to halt the retaliation or to discipline these individuals.  Defendant Bonnie Brown was aware that Defendant Ketler Louissaint (who was under her supervision) was retaliating against Plaintiff, and she took no action to halt the retaliation or to discipline Louissaint.

64.    Defendants Lorraine Haynes, Dr. Susan Erber, and Bonnie Brown are therefore liable under 42 U.S.C. § 1983 for their acts and omissions, which proximately caused the unlawful actions perpetrated by the Defendants under their supervision against Plaintiff in each of the First through Seventh Causes of Action.

## AND AS FOR A NINTH CAUSE OF ACTION

65.    Plaintiff repeats and re-alleges paragraphs 1 through 64 as if each paragraph is repeated verbatim herein.

66.    Defendant Thomas Hylan was informed by Plaintiff that other individual Defendants were retaliating against Plaintiff for exercising his First Amendment freedom of speech. Defendant Hylan had the ability to recommend to Defendant Chancellor Joel I. Klein that these individual Defendants be disciplined, which in turn would have helped to prevent

ˇ26ˇ

further retaliation against Plaintiff.  While acting under color of State Law, Defendant Thomas

Hylan failed to help prevent further retaliation against Plaintiff by recommending discipline.

Defendant Thomas Hylan is therefore liable under 42 U.S.C. § 1983 for his omissions, which

proximately caused the retaliation against Plaintiff in each of the First through Sixth Causes of

Action to continue.

  **WHEREFORE,** Plaintiff Joseph Fierro prays for judgment as follows:

For each of the First through Ninth Causes of Action as against Defendants City of New

York/New York City Department of Education, Joel Klein, Theresa Europe, and the other

individual Defendants named in each of these Causes of Action, a judgment:

 i. declaring the acts and conduct complained of herein in violation of 42 U.S.C §
1983;

 ii. enjoining and permanently restraining these violations and directing the
Defendants and their managers and officers to take such affirmative action as is
necessary to ensure that the effects of these unlawful practices are eliminated;

 iii. enjoining the Defendants and their managers and officers from committing or
allowing any further harassment of or retaliation against Plaintiff;

 iv. ordering Defendants, jointly and severally, to pay Plaintiff back wages and front
wages and raises, bonuses, and other fringe benefits that he would have received
had he not been unlawfully dismissed from his position as an Assistant Principal
at P753K and then later stripped of the title of Assistant Principal in the District
altogether;

 v. ordering Defendants, jointly and severally, to reinstate Plaintiff in his position as

an Assistant Principal and to grant him tenure, which he would have had already had he not been removed as Assistant Principal;

vi.  ordering Defendants, jointly and severally, to pay Plaintiff the raises, bonuses and benefits associated with tenure that he would have received had he been allowed to obtain tenure as an Assistant Principal;

vii.  ordering Defendants, jointly and severally, to restore Plaintiff's sick days since he had to take them as a result of Defendants' actions;

viii.  ordering Defendants, jointly and severally, to accord Plaintiff "whistleblower" status so that he can do his job without further retaliation;

ix.  ordering Defendants, jointly and severally, to pay Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring of 2006;

x.  ordering Defendants, jointly and severally, to pay Plaintiff specific damages for the wages that he lost from the Fall of 2005 to present because the distress that he suffered as a result of Defendants' actions prevented him from pursuing training and then employment to work one-on-one with autistic children;

xi.  ordering Defendants, jointly and severally, to pay Plaintiff specific damages for the insurance co-pays that he paid for medical treatment and medication that he received for the physical, emotional, and mental distress that he suffered as a result of Defendants' actions;

xii.  ordering Defendants, jointly and severally, to pay Plaintiff general and compensatory damages in an amount that would adequately compensate him for

the violation of his rights and for pain and suffering, humiliation, emotional distress, and mental anguish that he has suffered;

xiii.   ordering the individual Defendants, jointly and severally, to pay Plaintiff punitive damages;

xiv.   awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action – against all Defendants, jointly and severally; and

xv.   granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

Dated: Brooklyn, New York
May 5, 2008

OFODILE & ASSOCIATES, P.C.
Attorneys for Plaintiff Joseph Fierro

By: _____
Anthony C. Ofodile, Esq. (AO-8295)
498 Atlantic Avenue
Brooklyn, New York 11217
Tel. No.:  718-852-8300